2010 OK CIV APP 44

The TOWN OF GOLDSBY, Oklahoma, Plaintiff/Appellee,

v.

The CITY OF PURCELL, Oklahoma, Defendant/Appellant.

No. 106,925.

Court of Civil Appeals of Oklahoma, Division No. 4.

Jan. 5, 2010.

Rehearing Denied March 18, 2010.

Raymond A. Vincent, Ted N. Pool, Pool Blankenship Vincent & Pool, Oklahoma City, OK, for Plaintiff/Appellee.

William R. Dill, Norman, OK, for Defendant/Appellant.

JOHN F. FISCHER, Judge.

¶1 The City of Purcell appeals from the judgment of the district court declaring that a Purcell ordinance annexing territory was void for lack of proper statutory notice. Based on our review of the applicable law, we affirm.

## BACKGROUND

¶2 The Town of Goldsby is a municipality located in McClain County, Oklahoma, and governed by a statutory board of trustees. Purcell is also a municipality located in McClain County, and governed as a charter city. On May 9, 2007, Goldsby adopted a resolution proposing the annexation of certain territory adjacent to the town. On May 17, 2007, Goldsby published notice of the intended annexation in the "Purcell Register," a legal newspaper for McClain County. The notice set a date of June 11, 2007, for public hearing on the Goldsby annexation proposal. On May 25, Purcell published a notice in the "Oklahoman" newspaper of a proposed annexation that included the territory Goldsby had previously proposed to annex.[1] This notice set a date of June 8, 2007, for a public hearing on the Purcell annexation proposal. On May 31, 2007, Purcell published similar notice in the Purcell Register. Immediately after the June 8 hearing, Purcell passed an ordinance annexing the disputed area. After the June 11 hearing, Goldsby passed an ordinance annexing the same disputed area.

¶3 Goldsby filed a declaratory judgment action in the district court arguing that the Purcell annexation was void for lack of proper and timely publication of notice pursuant to 11 O.S. Supp.2005 § 21–103(B) and (C).[2] The district court held that Purcell's publication of notice in the "Oklahoman" did not meet the requirements of section 21–103(B)(1) that notice be published in "a legally qualified newspaper of general circulation in the territory." The court further held

that Purcell's later publication in the Purcell Register occurred less than 14 days before the June 8 public hearing, and did not meet the requirements of section 21–103(C) that "public hearing of such annexation shall be held no earlier than fourteen (14) days nor more than thirty (30) days following the publication and mailing of the notice." The district court consequently ruled that Purcell's annexation of the disputed territory was void. Purcell appeals.

## STANDARD OF REVIEW

¶4 The questions presented by Purcell's appeal are questions of statutory interpretation. "A legal question involving statutory interpretation is subject to de novo review ... i.e., a non-deferential, plenary and independent review of the trial court's legal ruling." *Heffron v. Dist. Court of Oklahoma County,* 2003 OK 75, ¶15, 77 P.3d 1069, 1076 (citing *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶8 and n. 5, 33 P.3d 302, 305 n. 5).

## ANALYSIS

¶5 Purcell raises six assignments of error that may be condensed into two questions of law. The first is whether Purcell complied with the publication requirements of the applicable statutes more than 14 days prior to the public hearing on its annexation proposal. The second is whether a failure to comply with the publication requirements invalidates Purcell's annexation ordinance.

### I. Statutory Publication of Notice

¶6 Title 11 O.S. Supp.2005 § 21–103(B)(1) requires that:

> The governing body of the municipality shall direct that notice of the proposed annexation of the territory be published in

---

1. On May 24, 2007, prior to publishing its May 25 notice, the mayor and city counsel of Purcell passed an ordinance purporting to annex substantially the same land that Goldsby had proposed to annex on May 9. This ordinance did not conform with Oklahoma law, and Purcell

does not argue on appeal that this ordinance was legally valid.

2. 11 O.S. § 21–103 was revised in 2009. However the notice requirements at issue did not change.

a legally qualified newspaper of general circulation in the territory. . . .

Section 21–103(C) requires that:

[t]he public hearing of such annexation shall be held no earlier than fourteen (14) days nor more than thirty (30) days following the publication and mailing of the notice.[3]

Finally, 25 O.S.2001 § 106 ("Legal Notice–Publication By Newspaper") provides:

No legal notice, advertisement, or publication of any kind required or provided for by the laws of this state to be published in a newspaper shall have force or effect unless published in a legal newspaper of the county. A legal newspaper of the county is any newspaper which, during a period of one hundred four (104) consecutive weeks immediately prior to the first publication of such notice, advertisement, or publication:
1. has maintained a paid general subscription circulation in the county; and
2. has been admitted to the United States mails as paid second-class mail matter; and
3. has been continuously and uninterruptedly published in the county. If there is no legal newspaper in a county, then all legal notices, advertisements, or publications of any kind required or provided for by the laws of this state shall be published in a legal newspaper in an adjoining county of this state, which newspaper has general circulation in the county or political subdivision in which such notice is required.[4]

¶ 7 It is undisputed that the Purcell Register is a legal newspaper of McClain County, but publication of Purcell's notice in the Purcell Register occurred less than 14 days before the public hearing and failed the re-quirement of section 21–103(C). It is further undisputed that publication in the Oklahoman occurred more than 14 days before the public hearing. Therefore, the decisive question is whether the Oklahoman is a "legal newspaper of the county" pursuant to section 106.

## II. The Definition of Publication

■ ¶ 8 Prior to 1983, section 106 required that a newspaper be "printed" in a county to qualify as a legal newspaper of that county. In 1983, the statutory language "has been *printed* in the county where delivered to the United States mails" was changed to "has been continuously and uninterruptedly *published* in the county." Neither party cites case law dealing with the definition of a "legal newspaper of the county" after the 1983 amendment requiring the newspaper be published rather than printed in the county. However, the Oklahoma Attorney General addressed the issue in opinion 2002 OK AG 10. This opinion noted that section 106 required both "general circulation" and "publication" in a county, indicating that the Legislature intended publication to have a meaning beyond simple circulation. The opinion further cited the discussion of section 106 contained in *Oklahoma Journal Publ'g Co. v. City of Oklahoma City*, 1979 OK CIV APP 42, ¶ 17, 620 P.2d 452, 455. *Oklahoma Journal* states that "[a] newspaper's distribution or circulation is not a proper consideration in determining the place of publication" and:

A newspaper must be considered published in one readily ascertainable location. An examination of the relevant factors discerned from *Ruble*[5] reveal the balance clearly in favor of holding The Oklahoma

---

**3.** In its brief to the district court, Purcell refers to these statutory sections as "21 O.S. § 21–104." Title 21 contains criminal statutes. The requirements for annexation by a city such as Purcell are set out in 11 O.S. Supp.2005 § 21–103, and the requirements for a town are set out in 11 O.S. Supp.2005 § 21–104. We will take all references to Title 21 in this context as being references to Title 11.

**4.** Purcell argues that the "general" provisions of 25 O.S.2001 § 106 are overcome by the "specific" provisions of 11 O.S. Supp.2005 § 21–103(B)(1), and therefore section 106 has no rele-vance to our inquiry. However, section 106 is clearly controlling: "[n]o legal notice, advertisement, or publication *of any kind required or provided for by the laws of this state* to be published in a newspaper *shall have force or effect unless published in a legal newspaper of the county*" (emphasis added). 11 O.S. Supp.2005 § 21–103(B)(1) uses the general term "published in a legally qualified newspaper of general circulation" but 25 O.S.2001 § 106 provides the specific definition of a "legal newspaper."

**5.** *Ruble v. Redden*, 1973 OK 157, 517 P.2d 1124.

Journal being published in Midwest City because that is where its principal offices are located, that is where its content is determined, that is where it is edited, and that is the place from which the newspaper is disseminated.

*Id.*

The Attorney General's opinion accordingly concluded that:

In the context of 25 O.S.2001 § 106, a newspaper is considered "published" at the location where the newspaper is disseminated by admission to the mails and has its principal offices, and where its form and content is determined. Accordingly, a newspaper cannot be a legal newspaper in an adjoining county, unless the adjoining county has no legal newspaper as stated in Section 106.

2002 OK AG 10 at ¶ 17.

¶ 9 Purcell's argument that both the Oklahoman and the Purcell Register are legal newspapers of McClain County is further expressly contradicted by section 106(3), which states:

If there is no legal newspaper in a county, then all legal notices, advertisements, or publications of any kind required or provided for by the laws of this state shall be published in a legal newspaper in an adjoining county of this state, which newspaper has general circulation in the county or political subdivision in which such notice is required.

This statute clearly provides that mere circulation in a county does not qualify a newspaper as a vehicle for publication of legal notice within the county. Only if there is "no legal newspaper in a county" may newspapers from adjoining counties be used for publication of legal notices. It is undisputed that the Oklahoman has no production facilities or public office in McClain County, that the Oklahoman is not edited, or its content determined in McClain County, and that that the Oklahoman's principle office is located in Oklahoma City.

¶ 10 We find the Attorney General's interpretation of section 106 persuasive. The Ok-

lahoman is not published in McClain County, and cannot be a legal newspaper in McClain county because the Purcell Register is published there. Further, *Ruble v. Redden,* 1973 OK 157, ¶ 18, 517 P.2d 1124, 1126, notes that the "legislature has an interest in seeing that the publication of legal notices is accomplished in a manner most likely to reach the persons affected by or interested in the notice." Contrary to Purcell's argument, this interest is not best served by allowing notice to be given in any publication circulated in the county. The concentration of all applicable notices into a single local publication provides a single accessible source for legal notices. This serves the purpose of disseminating legal notices in a manner most likely to reach the persons entitled to notice. Therefore, we find that the district court did not err in holding that the Oklahoman was not a "legal newspaper" of McClain County for the purpose of the notice provisions of 11 O.S. Supp.2005 § 21–103(B)(1).

### III. The Legal Effect of Improper Notice

■ ¶ 11 Purcell also argues that the district court erred in declaring its annexation ordinance void because of its failure to publish notice in the Purcell Register 14 days prior to the hearing on its annexation proposal. Section 21–103 requires publication of notice of a public hearing on a proposed annexation. Section 106 clearly provides that no required legal notice has force or effect unless published in a manner compliant with the applicable statute. Consequently, statutorily compliant notice is a prerequisite to the enactment of an annexation ordinance. Purcell's notice in the Oklahoman was not compliant because the Oklahoman is not a legal newspaper of McClain County. Purcell's notice in the Purcell Register was not compliant because it was published on May 31, only eight days before the June 8 public hearing. Therefore, Purcell's annexation ordinance is void. Goldsby legally annexed the disputed territory on June 11, and Purcell was powerless to annex the same territory at a later date.[6]

---

**6.** Purcell also argues that it gave adequate notice to achieve the purpose of the statute, irrespective

of whether the Oklahoman was a "legal newspaper" in McClain County, because the affected

## CONCLUSION

¶ 12 We find that the district court did not err in its holding that Purcell failed to properly publish notice of its proposed annexation, and Purcell's annexation of the disputed territory was void. The judgment of the district court is affirmed.

¶ 13 **AFFIRMED.**

GABBARD, P.J., and RAPP, J., concur.

property owners knew of the annexation proposal and the Oklahoman was more widely read than the Purcell Register in McClain County. However, Purcell provides no authority suggesting the notice requirements of section 21–103 may be equitably waived, or that some form of "substantial compliance" with the notice requirements· is legally sufficient, and we find no such authority.